**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| HOWARD JOHNSON INTERNATIONAL, INC., a Delaware Corporation, | : |
| Plaintiff, | :    **OPINION** |
| v. | :    Civil Action No. 07-2848 (WHW) |
| CLINTON HOSPITALITY, INC., an Oklahoma Corporation; RAMESH D. BHAKTA, an Individual; RAMESH B. BHAKTA, an Individual; SANMUKH G. BHAGAT, an Individual; ARVIND B. BHAKTA, an Individual; and JAYANTI BHAI BHAKTA, an Individual, | : |
| Defendants. | : |

**Walls, Senior District Judge**

Plaintiff Howard Johnson International, Inc. ("HJI") moves for entry of default judgment, pursuant to Fed. R. Civ. P. 55(b), against Defendants Clinton Hospitality, Inc. ("Clinton Hospitality") and Ramesh D. Bhakta, Ramesh B. Bhakta, Sanmukh G. Bhagat, Arvind B. Bhakta, and Jayanti Bhai Bhakta (collectively, the "Individual Defendants"). Defendants have not opposed this motion. Pursuant to Fed. R. Civ. P. 78, this motion is decided without oral argument. The motion is granted.

### FACTS AND PROCEDURAL BACKGROUND

Plaintiff HJI, a Delaware corporation with its principal place of business in Parsippany, New Jersey, operates a guest-lodging facility franchise system. (Compl. ¶ 1.)  Defendant Clinton Hospitality is an Oklahoma corporation, and the Individual Defendants are principals of Clinton

NOT FOR PUBLICATION

Hospitality and citizens of Texas, residing in San Antonio, Texas. (Compl. ¶¶ 2-3.)

This matter arises out of a license agreement dated June 28, 1999 (the "License Agreement") between HJI and Clinton Hospitality for the operation of a 125-room guest-lodging facility located at 1413 Neptune Drive, Clinton, Custer County, Oklahoma 73601, Site No. 12441 (the "Facility").[1] (Id. ¶ 18; Aff. of Valerie Capers Workman (No. 6-5) ("Workman Aff.") ¶ 8.) Pursuant to Section 5 of the License Agreement, Defendants were obligated to operate an HJI guest-lodging facility for a 20-year term, during which Defendants were permitted to use HJI's trademarks (the "Marks") in association with the operation and use of the Facility as part of HJI's franchise system. (Compl.  ¶ 19, Ex. A § 5; Workman Aff. ¶ 9.)

The License Agreement imposed a number of contractual obligations on Defendants. Pursuant to Section 7, Section 18, and Schedule C of the License Agreement, Defendants were required to make periodic payments to HJI for royalties, marketing assessments, taxes, interest, reservation system assessments, and other fees (the "Recurring Fees"). (Compl.  ¶¶ 20-21, Ex. A §§ 7, 18 & Sched. C; Workman Aff. ¶ 13.) Section 3.9 required Defendants to prepare, submit, and maintain accurate financial information, including books, records, room rates, and number of rooms sold, for purposes of establishing the amount of royalties and the Recurring Fees owed to HJI. (Compl. ¶¶ 21-22, Ex. A § 3.9; Workman Aff. ¶¶ 14-15.)

---

[1] The Individual Defendants provided HJI a Guaranty of Clinton Hospitality's obligations under the License Agreement and agreed that upon default, they would "immediately make each payment and perform . . . each unpaid or unperformed obligation of [Clinton Hospitality] under the License Agreement." (Compl., Ex. B.) Accordingly, the Court will refer to all obligations under the License Agreement as being those of Defendants collectively, as opposed to those of Clinton Hospitality only.

NOT FOR PUBLICATION

Section 11.2 of the License Agreement provided HJI the right to terminate the License

Agreement, with notice to Defendants, for reasons including: (1) failure to operate the Facility as

an HJI guest-lodging facility; or (2) losing possession or the right to possession of the Facility.

(Compl. ¶ 23, Ex. A § 11.2; Workman Aff. ¶ 16.) In the event that HJI terminated the License

Agreement, Defendants agreed immediately to discontinue use of the Marks and to pay HJI

liquidated damages within 30 days of termination, in the amount of $1,000.00 multiplied by the

number of rooms that Defendants were authorized to operate. (Compl. ¶ 25, Ex. A § 18.1;

Workman Aff. ¶¶ 17, 19-20.) Defendants were authorized to operate 125 rooms, (Compl. ¶ 18),

meaning the liquidated damages would be no less than $125,000.00, (id. ¶ 60). Finally, Section

17.4 provided that, in the event of litigation, the non-prevailing party would "pay all costs and

expenses, including attorney's fees, incurred by the prevailing party to enforce [the License]

Agreement or collect amounts owed under [the License] Agreement." (Compl., Ex. A § 17.4.)

On or about September 20, 2002, Defendants ceased operations and relinquished

possession of the Facility. (Compl. ¶ 31; Workman Aff. ¶ 26.) In an October 22, 2002 letter, HJI

terminated the License Agreement. (Compl., Ex. C.) HJI insisted that Defendants (1) pay

liquidated damages in the amount of $125,000.00; (2) file all monthly reports and pay an

estimated $18,476.10 in unpaid Recurring Fees within 10 days; and (3) "de-identify" the Facility

and complete all post-termination responsibilities specified in the License Agreement. (Id., Ex.

C.)

As a result of the termination of the License Agreement, Defendants were prohibited from

continuing to use the Marks in any manner. (Id. ¶¶ 33-34, Ex. A § 13.1; Workman Aff. ¶ 28.) On

NOT FOR PUBLICATION

February 6, 2003, however, HJI inspected the Facility and documented Defendants' continued use of the Marks. (Compl., Ex. D; Workman Aff. ¶ 32.) In a March 11, 2003 letter, HJI again notified Defendants about their post-termination obligations and required immediate "de-identification" of the Facility. (Compl., Ex. E; Workman Aff. ¶ 33.)

HJI conducted three additional inspections, on April 21, 2003, June 9, 2003, and June 23, 2003, and noted Defendants' continuing use of the Marks without authorization. (Compl., Ex. F; Workman Aff. ¶ 34.) In July 10, 2003 and July 23, 2003 letters, HJI demanded that Defendants cease and desist operations of the Facility and advised them to completely discontinue use of and remove the Marks. (Compl., Ex. G, Ex. H; Workman Aff. ¶¶ 35-36.)

On August 11, 2003, HJI conducted a final inspection that revealed Defendants were then in compliance with the post-termination obligations stipulated in the License Agreement. (Compl., ¶ 42, Ex. I; Workman Aff. ¶ 37.)

HJI filed the Complaint on June 19, 2007, and service was made personally on Defendants on July 10, 2007. (Aff. of Joseph Morris III (No. 3) ("Morris Aff.") ¶¶ 2-3.) Defendants did not answer or otherwise respond to the Complaint. On August 28, 2007, HJI requested that the Clerk of the Court enter default against Defendants. Default was entered on February 5, 2008. On January 28, 2008, HJI filed this motion requesting entry of default judgment against Defendants.[2] The motion and supporting papers were served upon Defendants

---

[2] Despite HJI's request for entry of default on August 28, 2007, the Clerk of the Court had not entered default against Defendants before HJI's filing of this motion. In a January 31, 2008 letter, the Court informed HJI's counsel that HJI should modify its motion to request entry of default, in addition to entry of default judgment. (See Letter (No. 7).) Before HJI modified its motion, however, the Clerk of the Court entered default against Defendants. As a result of the

-4-

NOT FOR PUBLICATION

via regular and certified mail. (Cert. of Serv. (No. 6-3).)

HJI seeks recovery of liquidated damages in the amount of $125,000.00, unpaid

Recurring Fees in the amount of $28,165.43, pre-judgment interest on the liquidated damages

and unpaid Recurring Fees, and attorney's fees and costs. HJI also seeks damages for

Defendants' alleged violation of Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114,

1125(a).[3]

## LEGAL STANDARD

Fed. R. Civ. P. 55(b)(2) governs a court's entry of default judgment. The party against

whom default judgment is requested must have been properly served with process. Fed. R. Civ.

P. 55(b)(2); Local Union No. 98, Int'l Bd. of Elec. Workers v. Cableco, Inc., No. 99-755, 1999

WL 269903, at *1 (E.D. Pa. Apr. 28, 1999). Before default judgment may be entered by a court,

the moving party must have obtained an entry of default pursuant to Fed. R. Civ. P. 55(a). See

10A Wright, et al., Federal Practice & Procedure § 2682  (3d ed. 1998).

A party seeking default judgment is not entitled to such relief as a matter of right, even

where the defendant was served with process and the default has been noted pursuant to Fed. R.

Civ. P. 55(a). See, e.g., Cableco, 1999 WL 269903 at *1 (citing Petrucelli v. Bohringer &

Ratzinger, 46 F.3d 1298, 1303 (3d Cir. 1995)). The district court has the discretion to enter

_____

Clerk of the Court's apparent oversight, the Court will treat this motion as a motion for entry of
default judgment following the proper entry of default.

[3] HJI asserts that Defendants also violated Section 43(c) of the Lanham Act, 15 U.S.C. §
1125(c). (Compl. ¶¶ 49-50.) The Court finds that HJI's request for damages is sufficiently
demonstrated under Section 43(a), 15 U.S.C. § 1125(a). Accordingly, the Court declines to
address the merits of HJI's Section 43(c) claim.

NOT FOR PUBLICATION

default judgment, although entry of default judgments is disfavored as decisions on the merits are preferred. Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984). When considering a motion for default judgment, a court may consider the following factors: the potential amount of damages; whether issues of material fact or substantial public concern are implicated; whether the default is primarily technical; whether the moving party has been substantially prejudiced by the delay involved; whether the grounds for default are clearly established or in doubt; whether the default was attributable to good faith, mistake, or excusable neglect; and whether the court may later be obliged to set aside the default. Franklin v. Nat'l Maritime Union of Am., No. 91-0480, 1991 WL 131182, at *1 (D.N.J. July 16, 1991) (citing 10 Wright, et al., Federal Practice & Procedure § 2685 (2d ed. 1983)).

Although a court should accept as true the well-pleaded factual allegations of the complaint, it need not accept the moving party's legal conclusions or factual allegations relating to the amount of damages. Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990) (citing 10 Wright, et al., Federal Practice & Procedure § 2688(2d ed. 1983)). Consequently, before granting a default judgment, a court must first ascertain whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." Directv, Inc. v. Asher, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing 10A Wright, et al., Federal Practice & Procedure § 2688 (3d ed. 1998)). The Court must also "conduct its own inquiry 'in order to ascertain the amount of damages with reasonable certainty.'" Int'l Assoc. of Heat & Frost Insulators v. S. Jersey Insulation Servs., No. 05-3143, 2007 WL 276137, at *1 (D.N.J. Jan. 26, 2007) (quoting In re Indus. Diamonds, 119 F. Supp. 2d

-6-

NOT FOR PUBLICATION

418, 420 (S.D.N.Y. 2000)).

## DISCUSSION

### 1.      Liability[4]

The record indicates that Plaintiff HJI effected service of process on Defendants, (Morris

Aff. ¶¶ 2-3), default was entered by the Clerk of the Court, and Defendants were served with this

motion for entry of default judgment, and its supporting documents, via certified and regular

mail, return receipt requested, (Cert. of Serv. (No. 6-3)). The Court is satisfied that Defendants

have had ample notice of the Complaint and of the motion for entry of default judgment and have

chosen not to respond. Accordingly, the Court will treat the allegations as to liability in the

Complaint as true and admitted by Defendants.

### A.      Breach of the License Agreement

Under Section 11.2 of the License Agreement, HJI could terminate the License

Agreement, with notice to Defendants, for Defendants' failure to operate the Facility as a

Howard Johnson facility. (Compl. ¶ 23, Ex. A § 11.2; Workman Aff. ¶ 16.)  Because Defendants

relinquished possession and operation of the Facility, (Compl. ¶ 31, Ex. C; Workman Aff. ¶ 26),

HJI, with written notice to Defendants, terminated the License Agreement, (Compl. ¶ 32, Ex. C;

Workman Aff. ¶ 27). Accordingly, HJI has established grounds to impose liability on Defendants

for breach of the License Agreement.

---

[4] As noted in footnote one, the Individual Defendants provided HJI a Guaranty of Clinton
Hospitality's obligations under the License Agreement. (Compl., Ex. B.)

NOT FOR PUBLICATION

### B.    Violation of the Lanham Act

Section 32 of the Lanham Act, 15 U.S.C. § 1114, states that:

(1) Any person who shall, without the consent of the registrant –

> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . .

shall be liable in a civil action by the registrant . . . .

Further, Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides that:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

To prevail on a claim under either of these Sections, "the owner of a valid and legally protectable mark . . . must show that a defendant's use of a similar mark for its goods 'causes a likelihood of confusion.'" Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 708-09 (3d Cir. 2004) (citing A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir. 2000).

Accordingly, the Court must determine whether Defendants' alleged unauthorized use of the Marks created a "likelihood of confusion."

The Third Circuit has developed a multi-factor test for determining "likelihood of

-8-

**NOT FOR PUBLICATION**

confusion" that weighs the following factors:

> (1) the degree of similarity between the owner's mark and the alleged infringing mark;

> (2) the strength of the owner's mark;

> (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;

> (4) the length of time the defendant has used the mark without evidence of actual confusion arising;

> (5) the intent of the defendant in adopting the mark;

> (6) the evidence of actual confusion;

> (7) whether the goods, competing or not competing, are marketed through the same channels of trade and advertised through the same media;

> (8) the extent to which the targets of the parties' sales efforts are the same;

> (9) the relationship of the goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors;

> (10) other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's market.

Id. at 709. "'None of these factors is determinative in the likelihood of confusion analysis and each factor must be weighed and balanced one against the other.'" Id. (quoting Checkpoint Sys., Inc. v. Check Point Software Techs., Inc., 269 F.3d 270, 280 (3d Cir. 2001)). According to the Third Circuit, however, "[t]he single most important factor in determining likelihood of confusion is [degree of] similarity." McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC, 511 F.3d 350, 367 (3d Cir. 2007) (quoting A & H Sportswear, 237 F.3d at 216; Fisons Horticulture, Inc. v. Vigoro Indus., Inc., 30 F.3d 466, 476 (3d Cir. 1994)). "Further, 'when goods

NOT FOR PUBLICATION

are directly competing . . ., both precedent and common sense counsel that the similarity of the marks takes on great prominence."' Id. (quoting A & H Sportswear, 237 F.3d at 214).

HJI asserts that following its termination of the License Agreement, it inspected the Facility and documented Defendants' continued, unauthorized use of the Marks. (Compl. ¶ 12, Ex. D, Ex. F.) As a result HJI has established a high "degree of similarity between the owner's mark and the alleged infringing mark" because Defendants continued to use the Marks in identifying the Facility. Moreover, HJI alleges that Defendants attempted to "induce the traveling public" to rent rooms at the Facility after the termination of the License Agreement, (id. ¶¶ 30-31), and continued to rent rooms at the Facility, using the Marks, after the License Agreement was terminated, (id. ¶ 36), indicating Defendants' direct competition with HJI. Given the Third Circuit's, and common sense's, instruction that "when goods are directly competing . . . the similarity of the marks takes on great prominence," the Court concludes that Defendants' use of the Marks created a "likelihood of confusion" and that Defendants violated Sections 32 and 43(a) of the Lanham Act.[5]

2.      Damages

The only allegations in a plaintiff's complaint that are not treated as true upon consideration of a motion for default judgment are those pertaining to the amount of damages.

---

[5] The Court further concludes that HJI demonstrated that Defendants created a "likelihood of confusion" under other factors laid out in the Third Circuit test. HJI has shown, in its Complaint: (1) under factor two, HJI has expended "millions of dollars" to develop the strength of the Marks, (Compl. ¶ 15; Workman Aff. ¶ 6); (2) under factor five, Defendants intended to rent guest-rooms at the Facility using the Marks, (Compl. ¶¶ 18-19, Ex. A); and (3) under factor six, Defendants confused guests by using the Marks to rent guest-rooms at the Facility after the termination of the License Agreement, (id. ¶ 36; Workman Aff. ¶ 31). Based on HJI's Complaint, there is insufficient evidence to support any conclusion with respect to the other factors of the Third Circuit test.

NOT FOR PUBLICATION

Comdyne, 908 F.2d at 1149. Under Fed. R. Civ. P. 55(b)(2), a district court "may conduct such hearings or order such references as it deems necessary and proper" in order "to determine the amount of damages."

When damages are for a "sum certain or for a sum which can by computation be made certain," however, a further evidentiary inquiry is not necessary. Fed. R. Civ. P. 55(b)(1); KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 19 (1 st Cir. 2003); Comdyne, 908 F.2d at 1149. A claim for damages is a sum certain when "there is no doubt as to the amount to which a plaintiff is entitled as a result of the defendant's default." KPS & Assocs., 318 F.3d at 19. Sum certain situations include "actions on money judgments, negotiable instruments, or similar actions where the damages sought can be determined without resort to extrinsic proof." Id. at 19-20. In addition, claims for liquidated damages do not require further evidentiary inquiry. Id. at 20. Typically, liquidated damages are those either agreed upon by the parties in a contract, or fixed by operation of law. Id.

Here, HJI seeks damages in the form of (1) liquidated damages in the amount of $125,000.00; (2) unpaid Recurring Fees in the amount of $18,317.04; (3) pre-judgment interest on the liquidated damages and unpaid Recurring Fees; (4) infringement damages due to Defendants' alleged violations of the Lanham Act in the amount of $36,368.52; and (5) attorney's fees and costs.

A.      Liquidated Damages

In the event of a termination of the License Agreement, Section 18.1 of the License Agreement obligates Defendants to pay liquidated damages in the amount of $1,000.00 multiplied by the number of guest rooms that Defendants were authorized to operate. (Compl. ¶

NOT FOR PUBLICATION

18, Ex. A § 18.1; Workman Aff. ¶ 20.)  Defendants were authorized to operate 125 rooms, (Compl. ¶ 18; Workman Aff. ¶ 8), and as such, liquidated damages are to be no less than $125,000.00, (Compl. ¶ 60; Workman Aff. ¶ 47). After reviewing the License Agreement and the Affidavit of Valerie Capers Workman (the "Workman Affidavit"), the Court is satisfied with HJI's showing for liquidated damages. Default judgment is granted in the amount of $125,000.00 for liquidated damages.

### B.    The Unpaid Recurring Fees

Section 7 of the License Agreement covers the Recurring Fees, taxes, and interest that Defendants were required to pay HJI. According to Section 7 and Schedule C of the License Agreement, the Recurring Fees were comprised of: (1) "'Royalty' equal to 4.0% of gross room revenues of the Facility accruing during each calendar month;" (2) "'Marketing Contribution' for advertising, marketing, training, and other related services and programs, which is equal to 2.0% of monthly gross room revenues;" and (3) "'Room sale charge,' for reservations for the Facility, which is equal to 2.5% of monthly gross room revenues." (See Compl., Ex. A § 7 & Sched. C; Workman Aff. ¶ 40.) HJI presented an itemized statement, detailing the Recurring Fees accrued from January 2002, through December 2002, which Defendants had not paid as of January 7, 2008. (Compl. ¶ 39, Ex. B.) According to the itemized statement, the unpaid Recurring Fees total $18,317.04. (Compl., Ex. B; see Workman Aff. ¶ 39.) HJI has sufficiently demonstrated through the Complaint, the Workman Affidavit, and the itemized statement that Defendants still owed HJI $18,317.04 in the form of unpaid Recurring Fees following the termination of the License Agreement. The Court grants default judgment in that amount for the unpaid Recurring Fees.

NOT FOR PUBLICATION

      C.      **Pre-Judgment Interest on Liquidated Damages and the Unpaid Recurring Fees**

HJI seeks pre-judgment interest on the unpaid Recurring Fees, calculated at a rate of 1.5% per month, beginning October 22, 2002 – the date of the termination of the License Agreement – and continuing until the date of this Opinion. In addition, HJI seeks pre-judgment interest on the liquidated damages, calculated at 1.5% per month, beginning November 21, 2002 – thirty days after the termination of the License Agreement – and continuing until the date of this Opinion.[6] (Workman Aff. ¶¶ 41, 48.)

Section 7.3 of the License Agreement provides that interest will be paid at a rate of 1.5% per month, beginning on the date of termination, on any past due Recurring Fees. (Compl., Ex. A § 7.3; Workman Aff. ¶ 48.) The License Agreement does not contain such a provision relating to interest to be paid on liquidated damages. However, under New Jersey law, "the award of prejudgment interest for claims arising in contract is subject to the discretion of the trial court." Cooper Distrib. Co. v. Amana Refrigeration, Inc., 63 F.3d 262, 284 (3d Cir. 1995) (citing Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 478 (1988)). Pre-judgment interest can be awarded on either liquidated or unliquidated damages, in order "to indemnify the claimant for the loss of what the moneys due him would presumably have earned if the payment had not been

---

[6] Although HJI requests pre-judgment interest on the liquidated damages and the unpaid Recurring Fees only until the estimated February 4, 2008 return date of this motion, (Workman Aff. ¶¶ 41, 48), the Court interprets HJI's request to actually be seeking pre-judgment interest until the date of the entry of default judgment.

In addition, the beginning dates for the accrual of pre-judgment interest for the liquidated damages and the unpaid Recurring Fees are different due to the following: Section 7.3 of the License Agreement states that interest on any Recurring Fees begins to accrue on the date that they are due, (Compl., Ex. A § 7.3), whereas Section 12.1 of the License Agreement provides that liquidated damages must be paid within thirty days of the termination of the License Agreement, (Compl., Ex. A § 12.1).

**NOT FOR PUBLICATION**

delayed." Id. (quoting Ellmex Constr. Co. v. Republic Ins. Co. of Am., 202 N.J. Super. 195, 212-13 (App. Div. 1985)). The "basic consideration" in awarding pre-judgment interest is that the defendant has had the use, and the plaintiff has not, of the amount in question. County of Essex v. First Union Nat'l Bank, 186 N.J. 46, 61 (2006). It follows that the interest factor simply covers the value of the sum awarded for the pre-judgment period during which the defendant had the benefit of moneys to which the plaintiff is found to have been earlier entitled. Id.

HJI has been denied the use of both the amount due in liquidated damages and the amount due in unpaid Recurring Fees.  The Court will award pre-judgment interest on both damages awards. HJI is entitled to $128,026.28 in pre-judgment interest on the liquidated damages for the period from November 21, 2002 to the date of this Opinion.[7] HJI is entitled to $19,026.21 in pre-judgment interest on the unpaid Recurring Fees for the period of October 22, 2002 to the date of this Opinion.[8] Accordingly, default judgment for pre-judgment interest on liquidated damages and the unpaid Recurring Fees will be entered in the total amount of $147,052.49.

### D.      Infringement Damages Under the Lanham Act

Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a), provides:

When a violation of any right of the registrant of a mark registered in the Patent and

---

[7] The interest rate of 1.5% per month is equivalent to a rate of 18% per year. Eighteen percent of the $125,000.00 liquidated damages amount is $22,500.00 in interest due per year. That amount, divided by 365 days in a year, equals the amount of interest due per diem: approximately $61.64. The product of $61.64 multiplied by 2,077 days equals $128,026.28 due in pre-judgment interest for the period before the date of this Opinion.

[8] Eighteen percent of the $18,317.04 owed in Recurring Fees is $3,297.06 in interest due per year. That amount divided by 365 days in a year, equals approximately $9.03 in interest due per diem. The product of $9.03 multiplied by 2,107 days, equals $19,026.21 due in pre-judgment interest for the period before the date of this Opinion.

**NOT FOR PUBLICATION**

> Trademark Office, [or] a violation under section 1125(a) . . . of this title . . . shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of section[] . . . 1114 of this title . . . to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only . . . .

Moreover, Section 35(a) of the Lanham Act provides that in its discretion, the court may treble the damages awarded to the plaintiff. § 1117(a).

HJI requests that the Court award it $36,368.52 in infringement damages under the Lanham Act. (Workman Aff. ¶ 53.) To arrive at this figure, HJI first notes that the infringement period lasted 245 days, from October 22, 2002 – the date that HJI terminated the License Agreement – through June 23, 2003 – the date that HJI last documented the alleged infringement. (Id. ¶ 49.)

HJI then uses the average Recurring Fees owed by Defendants during the period of January 1, 2002, through September 31, 2002, to conclude that its damages during the 245-day infringement period were $12,122.84.[9] (See id. ¶¶ 51-52.) According to HJI, the reason that it

---

[9] This figure is the result of the following formula derived by HJI. First, HJI provides the Court with records that indicate that for the period of January 1, 2002, through September 31, 2002, Defendants' average monthly reported gross room revenue was $18,046.00. (Workman Aff. ¶ 51, Ex C.) It appears that the period of January 1, 2002, through September 31, 2002 was used to determine average monthly reported gross room revenue because that represents the entire period in which the Facility operated as a guest-lodging facility before HJI's termination of the License Agreement. (See id., Ex. C.)

HJI then calculates that Defendants paid average monthly Recurring Fees of $1,533.91 during that nine-month period – i.e., 8.5% of average monthly reported gross room revenue. (Id. ¶ 51.) As stated above in the subsection detailing damages for "The Unpaid Recurring Fees," the Recurring Fees were comprised of: (1) "'Royalty' equal to 4.0% of gross room revenues of the Facility accruing during each calendar month;" (2) "'Marketing Contribution' for advertising, marketing, training, and other related services and programs, which equal to 2.0% of monthly gross room revenues;" and (c) "'Room sale charge,' for reservations for the Facility, which is equal to 2.5% of monthly gross room revenues." (Id. ¶ 40.) HJI estimates average Recurring Fees

NOT FOR PUBLICATION

uses Defendants' average Recurring Fees during the period of January 1, 2002, through

September 31, 2002 to calculate infringement damages is because "[i]n the absence of discovery,

HJI has no ability to ascertain the amount of Clinton Hospitality's gross room revenue during the

period of infringement." (Id. ¶ 50.) As the Third Circuit has observed, "courts have awarded a

royalty for past trademark infringement . . . most often for continued use of a product beyond

authorization, and damages were measured by the license the parties had or contemplated." A &

H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 166 F.3d 197, 208 (3d. Cir. 1999) (en banc)

(citing Howard Johnson Co. v. Khimani, 892 F.2d 1512, 1519-20 (11th Cir. 1990); Ramada Inns,

Inc. v. Gadsden Motel Co., 804 F.2d 1562, 1563-65 (11th Cir. 1986); Boston Prof'l Hockey

Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc., 597 F.2d 71, 75-76 (5th Cir. 1979)). And,

district courts in this Circuit, including this Court, have found that the use of average recurring

fees is acceptable to calculate infringement damages. See, e.g., Ramada Worldwide Inc. v. ERS

Invs., Inc., No. 07-1095, 2008 U.S. Dist. LEXIS 3268, at *18-20 (D.N.J. Jan. 16, 2008) (Walls,

J.); Days Inns Worldwide, Inc. v. Mayu & Roshan, LLC, No. 06-1581, 2007 U.S. Dist. LEXIS

41997, at *22-25 (D.N.J. June 8, 2007); Ramada Worldwide, Inc. v. Jay-Dharma, LLC, No. 05-

3311, 2006 U.S. Dist. LEXIS 77969, at *23-27 (D.N.J. Oct. 23, 2006).  Accordingly, the Court is

satisfied that Defendants' average Recurring Fees is an appropriate benchmark to calculate

damages sustained by HJI as a result of Defendants' infringement and that HJI suffered

---

of approximately $49.48 per day, the result of dividing the average monthly Recurring Fees of
$1,533.91 by thirty-one days. (Id. ¶ 52.)

Last, HJI multiplies the average daily Recurring Fees – approximately $49.48 – by the
total days comprising the infringement period – 245 days –  resulting in infringement damages of
$12,122.84. (Id.)

NOT FOR PUBLICATION

$12,122.84 in damages due to the infringement.

HJI also requests that the Court treble the infringement damages. (Compl. ¶ 50; Workman Aff. ¶ 53.) As stated above, Section 35(a) directs that in its discretion, the court may treble the damages awarded to the plaintiff.  Treble damages are only to be imposed, however, if the defendant's infringement was intentional, knowing, or willfully blind. See Microsoft Corp. v. CMOS Techs., 872 F. Supp. 1329, 1339-41 (D.N.J. 1994) (citing Louis Vuitton S.A. v. Lee, 875 F.2d 584, 588-90 (7th Cir. 1989)).

The record sufficiently demonstrates that Defendants' infringement was, at the very least, willfully blind. The Defendants were repeatedly notified, via written letter, that they were required to "de-identify" the Facility and remove the Marks immediately upon termination of the License Agreement. (Compl., Ex. C, Ex. E.) Further, HJI demanded that Defendants "cease and desist" use of the Marks, via written letters, dated July 10, 2003, and July 23, 2003. (Id., Ex. G, Ex. H.) Notwithstanding the notifications to cease and desist, HJI documented Defendants' continued use of the Marks without authorization until June 23, 2003. (Id., Ex. D, Ex. F, Ex. I.) Given this willfully-blind infringement, the Court will treble the damage award of $12,122.84.

The Court recognizes that this award of infringement damages does not represent a "sum certain" under Fed. R. Civ. P. 55(b)(1). In its discretion, however, a district court may decline to conduct a Fed. R. Civ. P. 55(b)(2) hearing where the "amount claimed [is] capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." KPS Assocs., 318 F.3d at 21 (quoting Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc., 722 F.2d 1319, 1323 (7th Cir. 1983)). The Workman Affidavit, together with HJI's exhibits, provides the Court with sufficient information to inform its conclusions on

NOT FOR PUBLICATION

the amount of damages resulting from Defendants' infringement. As a result, the Court grants

default judgment in the amount of $36,368.52 for infringement damages under the Lanham Act.

###### E.     Attorney's Fees and Costs

Section 17.4 of the License Agreement provides that "[t]he non-prevailing party will pay

all costs and expenses, including reasonable attorney's fees, incurred by the prevailing party to

enforce [the License] Agreement or collect amounts owed under [the License] Agreement."

(Compl., Ex. A § 17.4.) Although the Court finds that HJI is entitled to recover reasonable

attorney's fees and costs of this action, the Court is not satisfied with the descriptions of legal

services provided in the Certification of Lois H. Goodman. (Cert. of Lois H. Goodman (No. 6-4)

¶¶ 6-8.) Pursuant to L. Civ. R. 54.2, the Court requests that HJI submit an application for the

Court's review, detailing how attorney's fees and costs were calculated, including descriptive

time entries from counsel's billing records. As requested by HJI, these documents will be subject

to an in camera review to accommodate counsel's attorney-client privilege concerns. The Court

requests that HJI submit these records within thirty days of the date of this Opinion.

###### CONCLUSION

For the preceding reasons, HJI's motion for entry of default judgment is granted.

Judgment is entered in the amount of $326,738.05. HJI shall have thirty days from the date of

this Opinion to submit an application detailing the attorney's fees and costs requested.

July 29, 2008                                                  **s/William H. Walls**
                                                              United States Senior District Judge

**NOT FOR PUBLICATION**

**Appearances**

Lois S. Goodman, Esq.
McElroy, Deutsch, Mulvaney & Carpenter
3 Gateway Center
100 Mulberry St.
Newark, New Jersey 07102-4079

Attorney for Plaintiff Howard Johnson International, Inc.